UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-89-TBR


ROSEMARY RYAN                                                    Plaintiff

v.

KENTUCKY DEPARTMENT OF CORRECTIONS,
WESTERN REGIONAL TRAINING CENTER,
AND LADONNA THOMPSON, COMMISSIONER              Defendants


## MEMORANDUM OPINION

This matter comes before the Court upon Defendants Kentucky Department of Corrections ("DOC"), Western Regional Training Center ("WRTC"), and Ladonna Thompson's Motion for Summary Judgment. (Docket No. 38.) Plaintiff Rosemary Ryan has responded, (Docket No. 39), and Defendants have replied, (Docket No. 41). Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below, the Court will GRANT Defendants' Motion.

### Factual Background

Plaintiff Rosemary Ryan was a Corrections Training Instructor at the Western Region Training Center for the Department of Corrections, Division of Training for more than twenty-five years. (Docket No. 1 at 1-2.)

On or about August 16, 2011, Ms. Ryan sent a text message to her immediate supervisor, WRTC Branch Manager, Donnie Youngblood, stating the following: "I got tased . . . MF . . . it hurt." (Docket Nos. 38 at 2; 38-2 at 1; 39 at 1.) Mr. Youngblood responded via text stating, "Guess you are not in the 20%." (Docket Nos. 38 at 2; 38-2 at 1; 38-5 at 9; 39 at 2.) Mr. Youngblood's comment was in reference to a prior conversation "amongst the training staff that

1

approximately twenty percent (20%) of women who are tased experience some sort of sexual response from the experience." (Docket Nos. 38 at 2; 38-2 at 1; 38-5 at 9; 39 at 2.) Several hours later, Ms. Ryan sent a reply to Mr. Youngblood stating, "That's inappropriate for my supervisor to ask and not your concern." (Docket No. 38-3 at 1.) The conversation appears to have ended when Mr. Youngblood told her via text, "I really wasn't asking. It was rhetorical humor. Sorry if you were offended." (Docket No. 38-3 at 1.)

Ms. Ryan then told Steven Faulkner, her second line supervisor, about the text exchange, and Mr. Faulkner filed a report with regards to the incident. (Docket Nos. 38 at 2; 39 at 2.) The DOC conducted an investigation into the incident and issued a formal reprimand to Mr. Youngblood on December 29, 2011. (Docket No. 38-3 at 1.) In the formal reprimand, the DOC informed Mr. Youngblood that his "initial response to Ms. Ryan's initial text was inappropriate for a supervisor to make to a subordinate. In the future, use better judgment when dealing with Ms. Ryan . . . [and] limit your future communication with Ms. Ryan to official business during duty hours . . . ." (Docket No. 38-3 at 1.)

Following his formal reprimand, Mr. Youngblood contacted attorney Don Thomas who sent a letter to Mr. Youngblood's supervisor Col. Chris Kleymeyer on January 11, 2012. (Docket No. 38-5 at 9.) In the letter, Mr. Thomas criticized the DOC for its failure to take action against Ms. Ryan "for making the initial inappropriate statement and, for continually creating a hostile work environment directed towards [his] client, Mr. Youngblood and others in the office." (Docket No. 38-5 at 9-10.) Additionally, Mr. Thomas requested that "the reprimand be removed from [Mr. Youngblood's] file and that [the DOC] reassign Ms. Ryan to another department so the current workplace at WRTC can return to an efficient and normal operation." (Docket No. 38-5 at 10.) Ms. Ryan contends that Mr. Youngblood's request to have her reassigned was

"clearly an attempt to interfere with her job and employment and is . . . obvious and blatant retaliation." (Docket No. 39 at 2.)

Approximately a year after the aforementioned incident, Ms. Ryan and Mr. Youngblood once again found themselves in conflict with one another. (Docket Nos. 38 at 3; 39 at 2.) The conflict arose when Ms. Ryan discovered two documents that Mr. Youngblood had on his "I drive (folder)." (Docket No. 38-5 at 1.) According to the summary of the investigation completed by the DOC, the first document she found was a draft of Mr. Youngblood's response to the formal reprimand issued against him and the second document was the same draft on the official letterhead of Mr. Youngblood's attorney with his attorney's signature. (Docket No. 38-5 at 6.) Upon finding the drafts, Ms. Ryan allegedly contacted Mr. Youngblood's supervisor, Mr. Kleymeyer as well as KCIW Deputy Warden Wes Dawson, an uninvolved third party. (Docket Nos. 38 at 3; 38-5 at 1, 6.) Ms. Ryan also allegedly attempted to email the drafts she found to Warden Dawson but accidentally sent the email to Mr. Youngblood. (Docket No. 38-5 at 6.) When she realized that she sent the email to the wrong person, Ms. Ryan apparently recalled the message. (Docket No. 38-5 at 6.) After learning of Ms. Ryan's actions, Mr. Youngblood submitted a complaint to Mr. Kleymeyer alleging that Ms. Ryan accessed his "I drive . . . and located documents that contained her name." (Docket No. 38-5 at 6.) The DOC initiated an investigation into the incident, which concluded in the issuance of a formal reprimand to Ms. Ryan on February 13, 2013. (Docket Nos. 38-6 at 1; 39 at 3.) The reprimand stated that Ms. Ryan's attempt to send the drafts via email to Warden Dawson constituted a violation of the Code of Ethics as the DOC characterized the drafts as "confidential information." (Docket No. 38-6 at 1.) According to the reprimand, "[a]ny release of confidential information shall require the prior consent of the appropriate authority within Corrections." *Id.* The reprimand letter

cautioned Ms. Ryan to "exercise better judgment regarding confidential or privileged information accessed while performing job-related tasks on [her] computer." *Id.* Ms. Ryan disagrees with the DOC's characterization of the drafts she accessed and attempted to transmit via email as "confidential information" because "[they were] not written on behalf of the Department of Corrections nor [were they] in a private computer file." (Docket No. 39 at 3.)

On the same day that Ms. Ryan received the written formal reprimand, she was also informed that she was required to provide medical certification for any future absences due to health reasons. (Docket No. 1 at 4.) Ms. Ryan contends that the requirement to submit a medical certification form when absent for medical reasons was "unprecedented" and unnecessary as she had over 1,000 hours of accumulated medical sick leave when the Defendants initiated the new requirement. (Docket No. 39 at 11.) The Defendants respond that they required Ms. Ryan to provide medical certification because her use of sick leave increased dramatically over a short period of time. (Docket No. 38 at 5.) The parties dispute whether the Defendants requirement that Ms. Ryan submit medical certification was permitted by the applicable state regulation, 101 KAR 2:102(2).[1] (Docket Nos. 38 at 22; 39 at 11.)

Shortly after the aforementioned events, on April 8, 2013, Ms. Ryan began using the sick leave that she had accumulated during her employment with the DOC. (Docket No. 38 at 6.) Ms. Ryan used her available sick leave until her retirement from the DOC on November 1, 2013. *Id.* at 7.

---

[1] The regulation allows the DOC to require a doctor's note as well as a medical certification form when an employee is absent for health reasons if the employee "is disabled by illness or injury." (Docket Nos. 38 at 22; 39 at 11.) The Court will not detail the parties' arguments with regards to the regulation nor will it decide whether Ms. Ryan was properly subject to this requirement based upon the regulation as that does not affect its analysis of whether or not the Defendants' requirement that Ms. Ryan provide medical certification constituted an adverse employment action.

## Procedural Background

On March 11, 2013, Ms. Ryan filed four internal grievances with the DOC, advancing claims similar to those in this litigation. (Docket No. 38-8 at 1-12.) Ms. Ryan's grievances were ultimately denied by LaDonna Thompson, the Commissioner of the Department of Corrections, as meritless on April 23, 2013. (Docket Nos. 38 at 4-5; 38-14 at 6, 11, 29.) Ms. Ryan appealed Ms. Thompson's denial of her grievances to the Kentucky Personnel Board on May 22, 2013. (Docket Nos. 38 at 7; 38-14.) The parties disagree about the outcome of Ms. Ryan's appeals before the Personnel Board. Ms. Ryan states that she withdrew all of her appeals with the Personnel Board on March 28, 2014. (Docket No. 39 at 4.) Alternatively, the Defendants contend that on May 7, 2014 the Personnel Board ordered that all of Ms. Ryan's appeals against the DOC be dismissed. (Docket No. 38 at 7.)

In addition to the four grievances Ms. Ryan filed with the DOC, she also filed a Charge of Discrimination with the EEOC on or about June 13, 2013 and received her right to sue letter from the EEOC on February 13, 2014. (Docket No. 38 at 8.) Then, on May 5, 2014, Ms. Ryan filed her Complaint in this Court. (Docket No. 1.)

## Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "may not make credibility determinations nor weigh the evidence when determining

whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (first citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); then citing *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As they are moving for summary judgment, the Defendants must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Ms. Ryan's claims. Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the Defendants satisfy their burden of production, Ms. Ryan "must—by deposition, answers to interrogatories, affidavits, and admissions on file— show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). Keeping this standard in mind, the Court moves on to the merits.

## Discussion

### I.     Sex Discrimination

A plaintiff alleging sex discrimination, including for sexual harassment, may recover under Title VII on a theory of a hostile work environment.[2] *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986)); *see also Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) ("A plaintiff may

---

[2] While Ms. Ryan's Complaint includes a claim for sex discrimination based upon disparate treatment, (Docket No. 1 at 8), neither party directly addresses this claim in their briefing to this Court. (Docket No. 38 at 14; 39 at 5-7.) The only mention of an additional sex discrimination claim comes from the Defendants. In their Motion, they argue that "[a]lthough analyzed under slightly different standards, the Plaintiff also fails to state an actionable claim for sex discrimination . . . ." (Docket No. 38 at 14.) In her Response, Ms. Ryan does not respond to this brief argument made by the Defendants and instead bases her claim for sex discrimination entirely upon Mr. Youngblood's alleged sexual harassment. (Docket No. 39 at 5-7.) As Ms. Ryan does not discuss her claim for sex discrimination based upon disparate treatment and has not provided or pointed to any evidence to support such a claim, this Court will dismiss her claim.

establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment."). For a plaintiff to establish a *prima facie* case of hostile work environment based on sexual harassment, she must show by a preponderance of the evidence: "(1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and (5) that there is a basis for employer liability." *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

In her Complaint, Ms. Ryan does not state whether or not she seeks to bring her claim for sexual harassment under Title VII or under Kentucky's Civil Rights Act ("KCRA"). However, this omission does not affect the Court's analysis as the Sixth Circuit Court of Appeals has found that, "[a] sexual harassment claim brought under the [KCRA] is to be analyzed in the same manner as a claim brought under Title VII, its federal counterpart." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (citing *Ammerman v. Bd. of Educ. of Nicholas County*, 30 S.W.3d 793, 797-98 (Ky. 2000)).

Though the parties disagree as to every element other than the first element, this Court finds the heart of this dispute to revolve around the fourth element requiring that the alleged sexual harassment create a hostile work environment. This Court will assume without deciding that Ms. Ryan has established the other four elements of a *prima facie* case for sexual harassment, as her claim ultimately fails because she has not established that the alleged sexual harassment created a hostile work environment.

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment." *Nievaard v. City of Ann Arbor*, 124 F. App'x 948, 953 (6th Cir. 2005) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish that a hostile work environment exists, "[b]oth an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).  A court must not consider each alleged instance of harassment in isolation but rather "must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive." *Id.* (*Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). When considering the totality of the circumstances, the Court must look to such things as "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Smith*, 813 F.3d at 309 (quoting *Randolph*, 453 F.3d at 733). "Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

Here, the incidents alleged by Ms. Ryan do not meet the standard required to constitute a hostile work environment. To support her claim of sexual harassment, Ms. Ryan relies almost exclusively upon Mr. Youngblood's inappropriate text message in which he suggested that she was not among the twenty percent of women who experience a sexual response when being tased. (Docket Nos. 38-15 at 7, 61, 65; 39 at 6-7.) Ms. Ryan also points to Mr. Youngblood's placement of a picture of his wife in a bikini on his desk as well as a conversation in which Mr. Youngblood allegedly told Ms. Ryan about problems with his marital sex life. (Docket Nos. 38-

15 at 35-39; 39 at 6-7.) According to Ms. Ryan's deposition, the conversation regarding Mr. Youngblood's sex life took place before he received the written reprimand for the inappropriate text message related to Ms. Ryan being tased. (Docket No. 38-15 at 37.) Additionally, Mr. Youngblood turned the photograph of his wife away from sight when Ms. Ryan informed him that it made her uncomfortable. (Docket No. 38-15 at 36.)

Based on the allegations detailed above, Ms. Ryan simply "has failed to allege a pervasive pattern of harassment incidents." *Prechtel v. Kellogg's*, No. CIV A 305CV-753-H, 2007 WL 1610575, at *3 (W.D. Ky. May 31, 2007), *aff'd*, 270 F. App'x 379 (6th Cir. 2008). The Sixth Circuit has affirmed a district court's grant of summary judgment in favor of an employer for much more severe behavior than that alleged by Ms. Ryan in this case. *Wade v. Automation Pers. Servs., Inc.*, 612 Fed. App'x. 291, 298 (6th Cir. 2015) (affirming summary judgment for inappropriate comments, one gesture, and one incident of harasser exposing her breasts); *Clark*, 400 F.3d at 344 (affirming district court's grant of summary judgment where harassment consisted of vulgar jokes of a sexual nature, two instances of placing a vibrating pager on the plaintiff's thigh, and one incident in which harasser tried to look down the plaintiff's overalls occurring over two and half years); *Bowman*, 220 F.3d at 464 (affirming district court's grant of summary judgment where harassment consisted of supervisor rubbing employee's shoulders, grabbing employee's buttocks, touching employee's chest and making two sexually-laden invitations over the course of several years); *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (affirming district court's grant of summary judgment where harassment took place over approximately 16 months and consisted of several dirty jokes in the plaintiff's presence; one verbal sexual advance related to the plaintiff's evaluation; a single reference to the plaintiff as "Hot Lips" and isolated comments about the plaintiff's clothing).

While Mr. Youngblood's actions were at times inappropriate, this Court finds that his actions "*do[] not rise nearly* to the level of being severe and pervasive." *Prechtel*, 2007 WL 1610575, at *3 (emphasis added). Consequently, Ms. Ryan's claim for sexual harassment fails as a matter of law.

## II.    Age Discrimination

"Under both the [Age Discrimination in Employment Act ("ADEA")], 29 U.S.C. § 623, and the KCRA, KRS § 344.040(1), employers are prohibited from discharging or otherwise discriminating against any employee with respect to compensation, terms, conditions, or privileges of employment because of that individual's age." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008). Claims brought pursuant to the KCRA are "analyzed in the same manner" as claims brought pursuant to the ADEA. *Id.* at 393-94 (first citing *Williams v. Tyco Elec. Corp.*, 161 Fed. App'x. 526, 531 & n.3 (6th Cir. 2006); then citing *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984)). A plaintiff may establish age discrimination through either direct or circumstantial evidence. *Back*, 694 F.3d at 576 (first citing *Williams v. Wal–Mart Stores*, Inc., 184 S.W.3d 492, 495 (Ky. 2005); then citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011)). Here, Ms. Ryan seeks to establish a claim for age discrimination via circumstantial evidence. (*See* Docket No. 39 at 7.) "A circumstantial-evidence case involves proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Back*, 694 F.3d at 576 (quoting *Allen*, 545 F.3d at 394) (internal quotation marks omitted). The *McDonnell Douglas* burden-shifting framework applies in age discrimination cases where the plaintiff seeks to establish her case through circumstantial evidence. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973)). Under this framework, a plaintiff must first establish a *prima facie* case of age discrimination. Once the plaintiff does so, the burden shifts to the defendant, "[who] must articulate some legitimate, nondiscriminatory reason for the termination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant successfully articulates a legitimate, nondiscriminatory reason, then the burden shifts back to the plaintiff to demonstrate that the defendant's "proffered reason is a pretext." *Id.* (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)). While the burden of production shifts under the *McDonnell Douglas* framework, "[t]he burden of persuasion . . . remains on the . . . plaintiff at all times to demonstrate that age was the "but-for" cause of their employer's adverse action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)).

To establish a *prima facie* case of age discrimination, a plaintiff must show that: "(1) [s]he is a member of the protected class, that is, [s]he is at least forty years of age; (2) [s]he was subjected to an adverse employment action; (3) [s]he was qualified for the position; and (4) [s]he was treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (citations omitted). The plaintiff's "burden at the *prima facie* stage is 'not onerous' and 'poses a burden easily met.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

In this case, the Court will focus on the second element as Ms. Ryan fails to show that she was subject to an adverse employment action and, therefore, does not establish a *prima facie* case of age discrimination. This Court will assume without deciding that the other elements of a *prima facie* case of age discrimination are satisfied. It is difficult for the Court to discern from

her Response if Ms. Ryan believes it was only the requirement that she obtain medical certification that was an adverse employment action or if she also contends that her eventual retirement was a constructive discharge and, therefore, a second adverse employment action. (*See* Docket No. 39 at 7-9.) As the Court is unsure, it will analyze whether either the medical certification requirement or Ms. Ryan's retirement constitute an adverse employment action.

First, with regards to the Defendants' placement of Ms. Ryan on medical certification, the Court finds that it does not constitute an adverse employment action. An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)) (internal quotation marks omitted). "Under this standard, a 'materially adverse' change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing *Kocsis*, 97 F.3d at 886) (internal quotation marks omitted). "[D]e minimis employment actions are not materially adverse and, thus, not actionable." *Id.* (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)). A mere "bruised ego" is not sufficient to constitute an adverse employment action. *Id.* (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc)).

Here, the Defendants' requirement that Ms. Ryan receive medical certification when absent from work for health reasons was nothing more than "a mere inconvenience." While such a requirement imposed upon Ms. Ryan the responsibility to obtain excuses from her doctor when she was absent from work for health reasons and receive medical clearance to return to work, it did not constitute a "materially adverse" change in Ms. Ryan's employment conditions. A materially adverse change only occurs when there is a "significant change in employment status,

such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White*, 364 F.3d at 798 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Most adverse employment actions "inflict[] direct economic harm" on the employee. *Id.* (citing *Ellerth*, 524 U.S. at 761). The Defendants' imposition of the requirement that Ms. Ryan obtain medical certification when she was absent for health reasons, simply does not rise to the level of an adverse employment action as it did not inflict economic harm on Ms. Ryan or significantly change her employment status.

This Court's analysis and conclusion does not change when it considers that the first medical certification form Ms. Ryan received from the Defendants included a one hundred pound lifting requirement as part of her essential duties. (Docket Nos. 38-16 at 1; 39 at 8.) While Ms. Ryan continuously points to the Defendants inclusion of this requirement as proof of discrimination, the Court is not persuaded because the Defendants immediately removed such a requirement from the form when Ms. Ryan brought the requirement to their attention. (Docket No. 39 at 8.) Defendants argue that the one hundred pound lifting requirement was originally included on the medical certification form as some employees have to "lift[] crates of ammunition at the firing range." (Docket No. 38 at 27.) However, when Ms. Ryan informed the Defendants that the lifting requirement was in excess of her essential duties, the Defendants promptly removed the requirement so the form more accurately reflected the essential duties of her job. (Docket Nos. 38 at 27; 38-17 at 1; 39 at 8.) The duties of Ms. Ryan's job were not changed to include the ability to lift one hundred pounds, and she did not experience any direct economic harm from this error on the form. There is no evidence, despite Ms. Ryan's suggestions to the contrary, that "[t]he [one hundred] pound requirement was directed solely to

Ms. Ryan based on her age and the employer's knowledge that she could not lift [one hundred] pounds." (Docket No. 39 at 8.) The Defendants' inclusion and quick removal of this requirement does not constitute an adverse employment action.

Second, concerning Ms. Ryan's possible argument that the Defendants' actions constituted a constructive discharge, this Court finds such an argument unsuccessful. The Sixth Circuit recently reaffirmed that "a plaintiff may use a constructive discharge claim to show that he or she has suffered an adverse employment action." *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 420 (6th Cir. 2015). "A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Laster*, 746 F.3d at 727 (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987)). To establish a constructive discharge, a plaintiff must show that "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit." *Hurtt*, 627 F. App'x at 420 (citing *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012)). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined. *Savage*, 665 F.3d at 739 (citing *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999)).

Here, this Court will focus solely on the first element of constructive discharge as Ms. Ryan fails to satisfy this element and, consequently, cannot establish she experienced a constructive discharge as a matter of law. With regards to the first element of the constructive discharge inquiry concerning the creation of intolerable working conditions, the Sixth Circuit has stated the following:

> Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Laster*, 746 F.3d at 728 (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001)).

After reviewing Ms. Ryan's arguments and the evidence provided, the Court finds that there is no basis for a reasonable jury to find that the Defendants created "intolerable working conditions." First, the Court must note that Ms. Ryan does not argue that she experienced any of the aforementioned seven factors. (Docket No. 39 at 8-9.) To support her claim for constructive discharge, Ms. Ryan appears to point to the Defendants' enactment of the requirement that she receive medical certification when absent for health reasons, her formal reprimand related to her attempt to email the documents she found on Mr. Youngblood's I drive to an uninvolved third party, and Mr. Youngblood's alleged statements regarding her retirement to other employees. (Docket Nos. 1 at 4; 39 at 8-9.) The Court will address each of these alleged incidents below.

Concerning the Defendants' requirement that Ms. Ryan submit a form certifying that she was fit to return to work after an absence for medical reasons, the Court finds that it simply does not indicate the creation of what a reasonable person would perceive as intolerable working conditions. The required medical certification before returning to work would certainly be an inconvenience but it would not compel a reasonable person to resign. *See McLeod v. Florida*, No. 4:11-CV-496/RS-CAS, 2012 WL 2004498, at *4 (N.D. Fla. June 5, 2012) (noting that providing medical certification is a "common practice and an employee could not reasonably find it objectionable"); *see also DaCosta v. Birmingham Water Works & Sewer Bd.*, 256 Fed.

App'x. 283, 287 (11th Cir. 2007) (finding an employer's requirement that employee bring a doctor's note after being absent for an illness was not an adverse action). With regards to the formal reprimand Ms. Ryan received, the Sixth Circuit has found that "unless [such a] letter accompanied some other action, such as a demotion or salary reduction," it does not constitute a constructive discharge. *Jones v. Butler Metro. Hous. Auth.*, 40 F. App'x 131, 137 (6th Cir. 2002) (first citing *Krause v. City Of LaCrosse*, 246 F.3d 995, 1000 (7th Cir. 2001); then citing *Kocsis*, 97 F.3d at 882-83). Ms. Ryan did not receive a demotion or salary reduction or any other tangible harm as a result of the formal reprimand and, therefore, the formal reprimand Ms. Ryan received cannot support a claim for constructive discharge. Lastly, with regards to Mr. Youngblood's alleged statements to other employees that Ms. Ryan was retiring and offering them her position, Ms. Ryan has provided no evidence of such statements for this Court to consider. While Ms. Ryan states in her Response that she "expects to call witnesses at the trial to testify [that her] position was offered to other employees while she was still employed at the Department of Corrections," (Docket No. 39 at 9), such an expectation is not sufficient to meet her burden of production to defeat a motion for summary judgment. Fed. R. Civ. P. 56. Ms. Ryan has not presented any evidence in support of her position upon which "the trier of fact could reasonably find for [her]." *Goodwin v. CSX Transp., Inc.*, No. 3:07-CV-00483-TBR, 2010 WL 3190745, at *1 (W.D. Ky. Aug. 11, 2010) (citing *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996)). Consequently, this Court will not consider Ms. Ryan's unsupported allegations because "at the summary judgment stage, [this Court] must look to the evidence and the facts, not to labels and allegations." *Steward v. New Chrysler*, 415 F. App'x 632, 640 (6th Cir. 2011).

As Ms. Ryan did not demonstrate that she suffered an adverse employment action, she has failed to establish a *prima facie* case of age discrimination. Ms. Ryan's age discrimination claim fails as a matter of law.

### III. Retaliation

Under Title VII, an employer cannot discriminate against an employee because that employee engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e–3(a). Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

"[A] Title VII retaliation claim can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Laster*, 746 F.3d at 730 (quoting *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)) (internal quotation marks omitted).

Here, Ms. Ryan seeks to establish a claim for retaliation not by direct evidence but rather by proffering circumstantial evidence. (Docket No. 35 at 4-7.) Consequently, this Court must analyze her retaliation claim under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas*. *See* 411 U.S. at 800-06. In order to establish a *prima facie* case of retaliation under Title VII, the plaintiff must show by a preponderance of the evidence that:

> 1) [s]he engaged in activity that Title VII protects; 2) defendant knew that [s]he engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists

*Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir. 2003) (first citing *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); then citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008)).

Here, this Court will focus on the third element, which requires that the Defendants must have taken an adverse employment action against Ms. Ryan. The Court will assume without deciding, as it has done previously in this opinion, that the other elements of a *prima facie* case are satisfied. Because Ms. Ryan has not established that the defendant took an adverse employment action against her, she has not successfully established a *prima facie* case of retaliation and her claim for retaliation fails as a matter of law.

Ms. Ryan argues that the following events constitute adverse employment actions against her: (1) her placement on medical certification; (2) the inclusion of the one hundred pound lifting requirement on first medical certification form; (3) her exclusion from annual training for the Corrections Emergency Response Team ("CERT"); (4) the decrease in the frequency of her trips to Frankfort, Kentucky; and (5) a workplace mediation that occurred without Ms. Ryan present. (Docket No. 39 at 11-13.)

First with regards to Ms. Ryan's placement on medical certification and the Defendants' initial inclusion of a one hundred pound lifting requirement on her first medical certification form, this Court for the reasons previously given in this opinion finds that these events do not constitute an adverse employment action.

Concerning Ms. Ryan's exclusion from the CERT training in 2012, the Court finds that it also does not constitute an adverse employment action. According to Ms. Ryan, though she was

not a member of the CERT team, she had attended the annual CERT training event for the five or six years prior to 2012. (Docket Nos. 1 at 3; 39 at 12.) Ms. Ryan claims that she was not sent on behalf of her employer to the CERT training in 2012 as retaliation for reporting Mr. Youngblood's inappropriate text message. *Id.* In her deposition, Ms. Ryan stated that as she had gone in years past, she expected to attend in 2012 and scheduled her vacation time around the event. (Docket No. 38-15 at 32, 64.) While the Court sympathizes with Ms. Ryan's desire to attend the training, the Sixth Circuit has found that exclusion from a training opportunity is not an adverse employment action if the plaintiff does not suffer "any demotion, loss of pay, loss of responsibility, or other materially adverse effect." *Creggett v. Jefferson Cty. Bd. of Educ.*, 491 F. App'x 561, 2012 WL 3104508288, at *4 (6th Cir. 2012) (unpublished table decision) (citing *Lindsey v. Whirlpool Corp.*, 295 Fed. App'x. 758, 768 (6th Cir. 2008)). Here, Ms. Ryan has not suggested nor has she produced any evidence that would suggest that she suffered any of the aforementioned materially adverse effects as a result of her exclusion from the CERT training. (*See* Docket No. 39 at 11-12.) "Without evidence of this sort, mere denial of a supplemental training, even if other employees were allowed to attend the training, is not an adverse employment action." *Creggett*, 2012 WL 3104508288, at *4.

With regards to Ms. Ryan's contention that she was not allowed to continue to travel to Frankfort, Kentucky on a bi-weekly basis to work on a project referred to in her deposition as ACA accreditation, the Court finds that this change does not constitute an adverse employment action. (Docket No. 38-15 at 64.) In her deposition, Ms. Ryan states that there was no benefit to participating in the ACA accreditation project "other than working a lot of hours for it." (Docket No. 38-15 at 33.) When Ms. Ryan was no longer assigned to work on the ACA accreditation project, she felt that the decision was retaliatory as "[i]t was something that [she] truly enjoyed

doing." *Id.* at 33-34. As any change in her participation in the ACA accreditation project, did not result in a "materially adverse change in the terms and conditions of [her] employment," it cannot constitute an adverse employment action. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). This change was simply "an alteration of job responsibilities," and Ms. Ryan has not provided any evidence that this alteration adversely affected her compensation or benefits. *Id.* (citations omitted). In other words, the change in Ms. Ryan's responsibilities did not "inflict[] direct economic harm" upon her, as is the case with most adverse employment actions. *White*, 364 F.3d at 798 (citing *Ellerth*, 524 U.S. at 761).

Lastly, concerning the Defendants' arrangement of a workplace mediation, the Court finds that such an action does not at all constitute an adverse employment action. According to the Defendants, the DOC contacted the Personnel Cabinet, an Executive Branch state agency unaffiliated with the DOC, and requested a team of mediators come to the WRTC to meet with the Ms. Ryan, the Defendants, and their co-workers. (Docket No. 38 at 27.) The Defendants contend that Ms. Ryan was invited to participate but declined the invitation. *Id.* Ms. Ryan disagrees and contends that she was never invited to participate in the mediation. (Docket No. 39 at 13.) Ms. Ryan states that the report from the mediators is "biased in its results" and that "the mediation ostracized [her] from her department and peers." *Id.* Whether Ms. Ryan was or was not invited to the mediation does not affect this Court's analysis because the mediation was not an adverse employment action. As this Court has previously noted, an adverse employment action involves changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," and usually "inflicts direct economic harm." *Ellerth*, 524 U.S. at 761; *White*

*v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008); *see also Hashemian v. Louisville Reg'l Airport Auth.*, No. 3:09-CV-951-R, 2013 WL 1788473, at *8 (W.D. Ky. Apr. 26, 2013), *aff'd* (June 13, 2014) (finding that employer requiring and paying for plaintiff to undergo conflict resolution counseling was not an adverse employment action). The Defendants' decision to hold a mediation to try to improve or resolve the conflicts they had with Ms. Ryan simply does not constitute an adverse employment action under the aforementioned standard.

As Ms. Ryan has failed to establish a *prima facie* case of retaliation, her claim for retaliation fails as a matter of law.

## Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment is **GRANTED**. (Docket No. 38.)

An appropriate Order and Judgment will issue separate from this Memorandum Opinion.

cc: Counsel